## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ARCHIE D. F. JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CV-52-CDL** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. For the reasons set forth below, the Commissioner's decision is **affirmed**.

## I.    Legal Standards

### A.    Standard of Review

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B.    Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Second, the ALJ determines the physical and mental

demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing SSR 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.    Procedural History

Plaintiff applied for disability benefits on April 5, 2017, alleging a disability onset date of December 15, 2015, which he amended to March 18, 2016 at the December 20, 2018 hearing. (R. 166, 36). Plaintiff alleged disability due to injuries to the right shoulder area, including a torn rotator cuff and bicep, lumbar fusion operations, right knee pain and pins in the right leg, loss of hearing, dyslexia, ongoing pain from a left foot procedure, and vision problems. (R. 188, 222). Before his alleged disability, Plaintiff worked as a printing press operator, customer service representative, a trucking company escort driver, and trailer assembler. (R. 170-83, 189, 211-18).

Plaintiff's claim was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). ALJ Christopher Hunt held a hearing on December 20, 2018, at which Plaintiff was represented by counsel. (R. 33). A vocational

expert (VE) also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated January 18, 2019. (R. 8). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on December 9, 2019. (R. 1). As a result, the ALJ's decision became the final decision of the Commissioner. *Id.* Plaintiff then timely appealed to the district court.

### III.   The ALJ's Decision

#### A.   Step One

At step one, the ALJ found that Plaintiff is insured through December 31, 2021 and that, at the time of the decision, Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date of March 18, 2016. (R. 17).

#### B.   Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of Degenerative Joint Disease, Degenerative Disc Disorder, and Obesity. *Id.* The ALJ found the following non-severe impairments: Status Post Left Foot Surgery. (R. 18). The ALJ also identified the following non-medically determinable impairments: Vision Deficiencies and Dyslexia. *Id.*

#### C.   Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ stated that he gave special consideration to Listings relating to Dysfunction of the Joints (Listing 1.02, et seq.) and Disorders of the Spine (Listing 1.04, et seq.). (R. 18). The ALJ considered Plaintiff's obesity according to the

criteria set forth in Social Security Ruling (SSR) 02-1p and determined that the effects of Plaintiff's obesity combined with his other impairments neither meets nor equals a listing. *Id*.

### D.     Step Four

The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [Plaintiff] can lift no more than twenty pounds occasionally and ten pounds frequently. Pushing and pulling limitations consistent with lifting. The [Plaintiff] can sit, stand, or walk six hours in an eight-hour workday. The [Plaintiff] could occasionally bend, stoop, kneel, crouch, crawl, or climb stairs. The [Plaintiff] cannot climb ladders, ropes, or scaffolding. The [Plaintiff] can only occasionally reach or work overhead. The [Plaintiff] cannot use the right hand for handling objects such as a hammer. The [Plaintiff] can no more than occasionally use the right upper extremity for grasping or repetitive motion.

(R. 18-19). In explaining the RFC determination, the ALJ discussed Plaintiff's hearing testimony, medical records, and medical opinion evidence in the record, as summarized in part below.

### i.     Hearing Testimony

Plaintiff testified that he suffers from right shoulder limitations that cause pain and limit his range of motion, and as a result he cannot perform overhead, front, or side lifting with his dominant right upper extremity. (R. 19). Plaintiff also testified that he underwent three back surgeries, most recently in 2015, and as a result he cannot stand in one place for more than thirty minutes or bend over. *Id*. Plaintiff also testified that he had a history of foot surgeries as a child that cause pain and difficulty walking. *Id*.

### ii.      Medical Records

Plaintiff's file contains treatment records from various medical providers covering a period from December 12, 2014 to September 11, 2017, for a variety of complaints and diagnoses, including right shoulder pain, rhabdomyolysis, right rotator cuff tear, and right shoulder tendinitis. (R. 20) (citing Ex. 1F, p. 51; 2F, p.1; 9F, p.1). On June 8, 2015, the Plaintiff underwent a magnetic resonance imaging (MRI) examination of the right shoulder that showed a partially torn tendon, which ultimately required Plaintiff to have arthroscopic rotator cuff repair surgery on August 28, 2015. *Id*. (citing (Ex. 4F)). Plaintiff underwent a second MRI on February 8, 2016, which showed moderate to severe arthritic changes to the acromioclavicular joint leading to Plaintiff's second arthroscopic right shoulder surgery on March 18, 2016, the amended alleged onset date of disability. *Id*. A third MRI on the right shoulder on May 25, 2016 showed a focal full thickness tear on the leading edge of the supraspinatus tendon and a mild thickness intrasubstance involve the distal infraspinatus tendon, and the superior labrum was diminutive in size. *Id*. Plaintiff underwent a third right shoulder arthroscopy, performed by David E. Nonweiler, M.D., on July 13, 2016. *Id*.

In addition to the medical records relating to Plaintiff's right shoulder procedures, the ALJ also noted physical examinations in the records which showed instances of

elevated blood pressure and body mass index (BMI) as well as tenderness, guarding, weakness, and reduced range of motion in the right shoulder. (R. 19-20).

On June 20, 2017, Sidney D. Williams, MD evaluated the Plaintiff, during which time the Plaintiff complained of musculoskeletal problems with his back, right shoulder, right knee, and right bicep. (R. 19). A physical examination showed an elevated BMI, elevated blood pressure, and a spinal surgical scar, as well as tenderness and restricted motion in the spine and right upper extremity. *Id*. Plaintiff's posture was bent, his gait was slowed to 20% of normal speed, and he exhibited difficulty rising from a seated position. *Id*. Straight leg raises were positive, and Plaintiff's deep tendon reflexes were reduced bilaterally. *Id*. Dr. Williams reviewed Plaintiff's abnormal lumbosacral x-rays which showed two bars and four screws fastened to L3-L4, and bone fusion changing notes at L4-L5. (R. 20).

Following Plaintiff's physical examination, Dr. Williams's diagnostic impressions included obesity, osteoarthritis of the bilateral knees, right rotator cuff injury, lumbar discogenic pain, postoperative pain, lumbar spinal stenosis, debility, impaired mobility, and post laminectomy syndrome of the lumbar region. *Id*.

### iii.    Medical Opinions

The ALJ noted the state agency physician's findings that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for up to six hours out of an eight hour workday. However, the ALJ did not find the state agency's opinions to be persuasive.

(R. 21) (citing Ex. 4A, p. 8-9). Instead, the ALJ adopted a more restrictive view of Plaintiff's limitations, citing Dr. Williams's consultative examination and the Plaintiff's treatment records indicative that Plaintiff would be unable to effectively use tools such as a hammer with his dominant right upper extremity due to his reduced range of motion in the right shoulder. (R. 20) (citing Ex. 11F, p. 2). The ALJ found Dr. Williams's more recent opinion to be consistent with Dr. Nonweiler's objective examination findings. *Id*.

### iv.   Assessment of Symptoms

The ALJ's decision discussed the medical evidence supporting the RFC determination. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 22). Specifically, the ALJ found that Plaintiff's testimony alleging substantial problems caused by his foot and spine was not fully supported by the evidence. *Id*. The ALJ specifically noted evidence showing that Plaintiff returned to work after his back and foot surgeries and that he only stopped working completely when he injured his shoulder. *Id*. Ultimately, the ALJ assessed the intensity, persistence, and limiting effects of Plaintiff's symptoms and found that Plaintiff can perform light work with limitations, consistent with the RFC. *Id*.

### v.   Past Relevant Work

The ALJ found that, with the RFC above, Plaintiff is capable of performing his past relevant work as a Customer Service Representative, (DOT # 239.362-014, sedentary, SVP

5 skilled). *Id*. However, based on the VE's testimony, the ALJ also found that Plaintiff cannot return to his other past relevant work. (R. 23). The ALJ thus proceeded to make alternative findings at step five.

### E.      Step Five

At Step Five, the ALJ determined that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, given Plaintiff's age, education, work experience, and RFC. (R. 24). The ALJ cited the VE's testimony that with the RFC the ALJ found at step four, an individual

> would be able to perform the requirements of representative occupations such as Furniture Rental Clerk , [Dictionary of Occupational Titles] (DOT # 295.357-018, Light, [specific vocational preparation (SVP)] 2 Unskilled, 33,000 jobs nationally), Counter Clerk (DOT 249.366-010, Light, SVP 2 Unskilled, 124,000 jobs nationally), and Usher (DOT 344.677-014, Light, SVP 2 Unskilled, 102,000 jobs nationally).

(R. 24). Accordingly, the ALJ found at step five that Plaintiff is not disabled. *Id*.

## IV.   Discussion

Plaintiff alleges two points of error: (1) the ALJ failed to perform a proper determination of the consistency of Plaintiff's testimony with the evidence of record; and (2) the ALJ failed to adequately consider Plaintiff's obesity. Defendant contends the ALJ's evaluation of symptoms was reasonable and supported by substantial evidence. Plaintiff's specific arguments are addressed below.

### A.      Intensity, Persistence, and Limiting Effects of Symptoms

An ALJ is required to evaluate the claimant's statements about the intensity, persistence, and limiting effects of alleged symptoms. SSR 16-3 outlines the process an

10

ALJ must follow in evaluating such statements. 2017 WL 5180304 (2017); *see also* 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

> The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

2017 WL 5180304 at *10. The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).[1] However, "[c]redibility determinations are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Id*. "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also* SSR 16-3p, 2016 WL 1237954.

Under *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987), in evaluating a claimant's statements regarding pain, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

---

[1]     *See* Social Security Ruling (SSR) 16-3p, 2016 WL 1237954 (explaining purpose of superseding ruling as "eliminating the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character").

11

> When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (internal citations omitted); *see also Keyes-Zachary*, 695 F.3d at 1167 (holding that in evaluating whether a claimant's alleged pain is disabling, an ALJ should consider "a claimant's persistent attempts to find relief for h[is] pain and h[is] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems," as well as "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." (citing *Luna*, 834 F.2d at 165-66 (internal quotation marks omitted)).

Plaintiff argues that the ALJ did not properly consider Plaintiff's testimony that he needs to recline a significant portion of the day to relieve his pain. Plaintiff contends that such error is harmful, because Plaintiff's back pain requires him to take unscheduled breaks during the day, and the VE testified that such a restriction would eliminate all jobs within Plaintiff's RFC. (*See* R. 55). Plaintiff testified at the hearing that he cannot sit or stand too long because of  back pain, and that "[t]he only way [to] eliminate some of the pain is by laying down and having [his] feet propped up." (R. 40). Additionally, in his Adult Function Report, Plaintiff stated that he is "not able to sit or stand for any length of time" and that he "sits until starts[sic] hurting & lays down for a while" during the day. (R. 203-204).

In his decision, the ALJ explained why he found that the objective medical evidence

in Plaintiff's file does not support the severity of his alleged symptoms. Specifically, the ALJ noted that Plaintiff's "testimony . . . alleged substantial problems caused by his foot and spine that were not fully supported by the evidence." (R. 22). The ALJ then cited details from Plaintiff's medical records. The ALJ noted that during Dr. Williams's June 20, 2017 consultative examination, Plaintiff "complained of musculoskeletal problems with his back"; Dr. Williams found "tenderness and restricted motion in the spine and right upper extremity"; Plaintiff's "[p]osture was bent, gait was slowed to 20% of normal speed, and [Plaintiff] exhibited difficulty rising from a seated position"; and Plaintiff's "straight leg raises were positive and . . . deep tendon reflexes were reduced bilaterally." (R. 19). The ALJ further noted that Dr. Williams reviewed Plaintiff's abnormal lumbosacral x-rays, which showed two bars and four screws fastened to L3-L4, and bone fusion changing notes at L4-L5. *Id*. The ALJ related Dr. Williams's diagnostic impressions "included obesity, osteoarthritis of the bilateral knees, right rotator cuff injury, lumbar discogenic pain, postoperative pain, lumbar spinal stenosis, debility, impaired mobility, and postlaminectomy syndrome of the lumbar region." *Id*. Notably, Dr. Williams opined that Plaintiff has certain functional limitations using tools with his right hand, but his report did not address any functional limitations relating to Plaintiff's need to lie down during the day. As the ALJ noted, Dr. Williams's findings are consistent with an RFC of light work with limitations. (R. 19-20). *See* 20 C.F.R. § 404.1529(c)(4) (Plaintiff's statements are to be evaluated "in relation to the objective medical evidence.").

Although the decision does not specifically cite Plaintiff's statement that he must

recline a significant portion of the day, the ALJ's explanation indicates that he considered Plaintiff's symptom allegations, including those related to back pain. (R. 19). The ALJ also noted Plaintiff's testimony that, due to his back surgeries, "he cannot stand in one place for more than 30 minutes or bend over." *Id*. Thus, the ALJ's decision indicates that he applied the proper legal standards in reviewing the evidence. *See Wall*, 561 F.3d at 70 ("Where, as here, the ALJ indicates that he has considered all the evidence our practice is to take the ALJ at his word.").

Moreover, the ALJ's hypothetical questioning of the VE at the hearing reflects that he considered Plaintiff's statements that he needs to take frequent unscheduled breaks throughout the day. (R. 55). However, despite Plaintiff's testimony that he reclines "[a]bout six hours" per day (R. 40-41), Plaintiff points to no medical opinion in the record that Plaintiff is restricted to this degree in his ability to sit. The undersigned acknowledges Dr. Williams's statement that Plaintiff's

> pains generally interfere with ADLs which require sitting, standing, stooping, lifting, squatting, reaching w[ith] right hand, climbing stairs, or participating in church, meetings, gatherings, movies, and other social/recreational activities[,] particularly fishing, hunting, and swimming. The pains cause him to lean on shopping carts when at Walmart to alleviate the back pain.

(R. 509). However, this statement does not indicate that Plaintiff cannot perform work consistent with the restricted range of light work set forth in the RFC determination.

The restricted range of light work in the RFC is consistent with multiple medical opinions in the record, as well as with Plaintiff's self-reported activities of daily living. *See, e.g.*, R. 406 (Dr. Nonweiler's notation that Plaintiff can "return to work on restricted

duty with permanent restrictions" and "may continue protected activity"); R. 408, 412, 414, 416, 418, 420, 424 (similar notations on other occasions); R. 509 (Dr. Williams's June 2017 opinion that Plaintiff's pains "result in limitations of ADLs"); R. 193-202 (self-reported activities, including performing "a little bit" of yardwork and housework, helping with laundry, driving, going out alone and using public transportation, despite inability to sit or stand for long periods). Accordingly, substantial evidence in the record supports the ALJ's credibility determination. In this instance, "Plaintiff has not directed [the court's] attention to any medical evidence that was disregarded" indicating that Plaintiff must recline significant portions of the day. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). Instead, Plaintiff points only to his subjective hearing testimony and written statements about his symptoms. Absent objective medical evidence stating that Plaintiff must recline significant portions of the day, "subjective complaints alone [are] insufficient to establish disabling pain." *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1498 (10th Cir. 1992) (citing *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (per curiam)).

The ALJ also reasonably explained "the link between the evidence and credibility determination." *Kepler*, 68 F.3d at 391. Specifically, the ALJ noted that despite Plaintiff's statements of disabling foot and spine pain, Plaintiff was able to continue working after his back surgery and only stopped working after injuring his shoulder. (R. 22). As such, the ALJ reasonably explained his conclusion that Plaintiff's back pain is not as limiting as alleged. *See Keyes-Zachary*, 695 F.3d at 1167 (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)) ("[C]ommon sense, not technical perfection, is our guide," therefore "so

long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility," it is not necessary that he make a 'formalistic factor-by-factor recitation of the evidence.'")). Nothing more was required. *See White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference"); *see also Lax*, 489 F.3d at 1084 ("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### B.    Obesity

Plaintiff argues that the ALJ erred by failing to sufficiently explain how Plaintiff's obesity impacts his RFC, and that such failure constitutes reversible error. SSR 02-1 requires consideration of a claimant's obesity in determining whether a claimant has medically determinable impairments that are severe or that meet or equal a listing and in determining the claimant's RFC. Relevant considerations include whether a claimant's obesity has an adverse impact on co-existing impairments and whether it limits the claimant's ability to sustain activity on a regular and continuing basis during an eight-hour workday, five days per week.[2]

---

[2]     SSR 02-1p was rescinded by SSR 19-2p. *See* 2019 WL 2374244. Though SSR 02-1p controls in this case, SSR 19-2p contains a similar mandate to SSR 02-1p that the ALJ "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id*. at *4. Further, both rulings advise the ALJ should consider that the "combined effects of obesity with [an]other impairment[] may be greater" than effects of the other impairment alone. *Id*; 2002 WL 34686281 at *6.

Here, even though Plaintiff did not raise obesity as an alleged impairment or limitation in his application (R. 188) or at the hearing (R. 31- 58),[3] the ALJ found that Plaintiff has severe obesity. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing and stated with respect to obesity:

> there are no physical listings directly dealing with obesity, however, the condition could potentially exacerbate the long-term effects and symptoms of co-morbid physical impairments. Accordingly, obesity is to be factored into the analysis of listings potentially met or equaled by a claimant's other severe physical impairments pursuant to SSR 02-lp, addressing obesity. Here, I have considered all severe impairments in combination with obesity and still found that the evidence does not support a finding that the claimant's impairments meet or equal a listing.

(R. 18).  In his RFC determination, the ALJ found Plaintiff's RFC to be a limited range of light work with limitations, consistent with Plaintiff's combined impairments and the medical evidence. (R. 22). The ALJ found the opinion of Dr. Williams to be persuasive and noted Dr. Williams's 2017 diagnostic impression of obesity. (R. 20). Specifically, Dr. Williams noted that Plaintiff had a family history of "overweight" and an abdominal examination revealed Plaintiff's "[c]entral obesity [without] masses." (R. 510). The assessment was "Obesity BMI 37." (R. 511). The ALJ also noted various instances in the medical records of Plaintiff's elevated BMI. *Id*.

---

[3]     The ALJ questioned Plaintiff about his weight during the hearing. Plaintiff indicated that he had "actually lost weight. . . . about 50 pounds." (R. 47). Plaintiff cited the reason for his weight loss as a lack of appetite due to pain as well as his departure from his job as an escort driver. *Id*.

The ALJ's decision must articulate how he considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1).[4] The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id*. § 404.1520c(b)(2). The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

Plaintiff relies heavily on the Tenth Circuit's decision in *Dewitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010) in arguing that the ALJ did not sufficiently explain why his severe impairment of obesity required no limitations in his RFC. However, *Dewitt* is distinguishable. In *Dewitt*, the court found the ALJ erred in giving "considerable weight" to the purported testimony of a non-examining consultant in formulating the claimant's RFC. 381 F. App'x at 785. "But in doing so, the ALJ mistakenly believed that [the physician] had identified obesity as one of DeWitt's medical conditions. In fact, [the physician] offered no opinion about the functional effects of DeWitt's obesity . . . [h]e simply never mentioned obesity." *Id*. Therefore, the Tenth Circuit concluded that it was error for the ALJ to rely on this testimony to satisfy his "duty to consider the effects of DeWitt's obesity on her other severe impairments." *Id*.

---

[4]     For claims filed on or after March 27, 2017, such as Plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

Here, the ALJ considered "the entire record," including Plaintiff's obesity, and then issued an RFC of light work with limitations. (R. 18). Based upon "a complete and thorough review of the evidence in the file," the ALJ found persuasive the diagnostic impressions of Dr. Williams, which noted Plaintiff's obesity and instances of elevated BMI in determining Plaintiff's functional abilities. (R. 20-21). The ALJ noted that he relied on Dr. Williams's "detailed findings" in determining Plaintiff's RFC. (R. 21).

In this case the ALJ's review of medical opinion evidence was in accordance with § 404.1520c(c). Unlike *DeWitt*, where the ALJ relied upon the testimony of a nonexamining consultant who showed no awareness of claimant's obesity, here, Dr. Williams, as an examining consultant, specifically mentioned and diagnosed Plaintiff's obesity. *See DeWitt*, 381 Fed. App'x. at 784. At step four, the ALJ specifically cited Dr. Williams's findings regarding Plaintiff's BMI and his diagnosis of obesity. (R. 19-20). The ALJ discussed Plaintiff's musculoskeletal limitations and found that Plaintiff can perform light work, but can "lift no more than [20] pounds occasionally and [10] pounds frequently"; push and pull with these limitations; "sit, stand, or walk six hours in an eight-hour workday"; and "occasionally bend, stoop, kneel, crouch, crawl, or climb stairs." (R. 18-22). The ALJ concluded that Plaintiff can perform light work, with these limitations and others, and that this RFC permits him to perform past relevant work as a customer service representative, as well as the alternative occupations identified at step five. (R. 26). Thus, this is not a circumstance "where the Court has no way of knowing why the ALJ included no obesity-related limitations in the RFC." *Steven D. v. Saul*, No. 18-cv-330-JED-

FHM, 2020 WL 5229703, *3 (N.D. Okla. Sept. 2, 2020) (finding error in the ALJ's reasoning related to claimant's obesity where the ALJ "did not discuss obesity at all."). In fact, the RFC includes significant non-exertional limitations, consistent with the findings of Dr. Williams and Dr. Nonweiler, which the ALJ found persuasive. (R. 22).

Plaintiff does not identify any evidence that his obesity causes further limitations that would preclude his performing light work with the limitations set out—to the contrary, Plaintiff admits that he *cannot* say what additional functional limitations, if any, are required due to his obesity. (Pl.'s Br., Doc. 14 at 8-9). Accordingly, the court finds that any deficiency in the ALJ's consideration of obesity was harmless. *Compare Arles v. Astrue*, 438 F. App'x 735, *12-13 (10th Cir. 2011) (unpublished) (noting that, although "[t]he ALJ could have provided a more particularized discussion of the effects of Mr. Arles's obesity" on his musculoskeletal function, the Plaintiff did not "discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work," and consequently the ALJ's statement that he considered the SSR 02-01p criteria "provide[d] an adequate discussion of the effect of obesity on [the] RFC");[5] *see also Smith v. Colvin*, 625 F. App'x. 896, 899 (10th Cir. 2015) (unpublished) (ALJ not required to note, for each specific piece of evidence, the absence of evidence that obesity contributed to additional functional limitations or exacerbated any impairment); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (unpublished) (no error where the ALJ did not specifically

---

[5]     Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

mention obesity in the RFC, but did include specific postural limitations, and the claimant failed to show evidence obesity required greater functional limitations); *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (ramifications of obesity discussed in connection with musculoskeletal impairments).

Here, the ALJ's decision shows that he considered the applicable criteria concerning Plaintiff's obesity. In addition, Plaintiff has failed to show that his obesity required greater functional limitations than the ALJ found in the RFC. Accordingly, the court finds no reversible error regarding the ALJ's consideration of Plaintiff's obesity in making the RFC determination.

## V.    Conclusion

The undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 12th day of April, 2021.

*Christine D. Little*

Christine D. Little
United States Magistrate Judge

21